IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (PHENTERMINE/   )
FENFLURAMINE/DEXFENFLURAMINE)   )    MDL NO. 1203
PRODUCTS LIABILITY LITIGATION   )
                             )
THIS DOCUMENT RELATES TO:   )
                             )
GEOFFREY DREW, M.D., et al.   )
                             )
       v.               )
                             )
AMERICAN HOME PRODUCTS, INC.   )    CIVIL ACTION NO. 00-21044

MEMORANDUM IN SUPPORT OF SEPARATE PRETRIAL ORDER NO. 8861

Bartle, J.                             April 9, 2012

      Plaintiffs Richard Powell, Hing Kwee, and George Weiss[1]
bring this action against defendant Wyeth[2] for: (1) violation of
the California Unfair Competition Law, Cal. Bus. & Prof. Code
§§ 17200 et seq.; (2) negligence; (3) strict liability; (4)
breach of implied warranty, and (5) fraud.  Before the court is
the motion of defendant for judgment on the pleadings under Rule
12(c) of the Federal Rules of Civil Procedure.

      Plaintiffs are physicians who operated weight-loss
clinics or other facilities where they prescribed the diet drugs
fenfluramine, dexfenfluramine, and phentermine to their patients.

---

1.  Plaintiffs Geoffrey Drew and Tom Kilmer stipulated to
voluntary dismissal from this action under Rule 41(a)(1)(A) of
the Federal Rules of Civil Procedure on August 8, 2011.

2.  Prior to March 11, 2002, Wyeth was known as American Home
Products Corporation.

According to the complaint, Wyeth engaged in a fraudulent scheme
to conceal the risks associated with these drugs and aggressively
to market the drugs to healthcare providers.  Plaintiffs do not
assert that they purchased diet drugs directly from Wyeth but
rather that they acted as "conduits" for the sale of diet drugs
by prescribing the drugs to patients.  Plaintiffs allegedly "had
their businesses ruined, years of good will undercut, their
livelihood destroyed, their standing in their respective
communities impaired, and the[ir] investment ... rendered
substantially worthless" when Wyeth withdrew the drugs from the
market in September, 1997 at the request of the United States
Food and Drug Administration ("FDA") due to evidence of the
drugs' adverse effects, including damage to heart valves.

Plaintiffs raise a claim in Count I under the
California Unfair Competition Law ("UCL").  That statute creates
a cause of action for any "person who has suffered injury in fact
and has lost money or property as a result of the unfair
competition." Cal. Bus. & Prof. Code § 17204.  Unfair competition
is defined as "any unlawful, unfair or fraudulent business act or
practice."  Id. at § 17200.

A plaintiff has suffered an "injury in fact" for
standing purposes under the UCL if he or she:  (1) expended money
due to the defendant's acts of unfair competition; (2) lost money
or property; or (3) was denied money to which he or she has a
cognizable claim.  Hall v. Time Inc., 70 Cal. Rptr. 3d 466, 469
(Cal. Ct. App. 2008).  An injury must be "[a]n actual or imminent
invasion of a legally protected interest, in contrast to an

-2-

invasion that is conjectural or hypothetical."  Id. at 470
(quoting Black's Law Dictionary 801 (8th ed. 2004)).

Plaintiffs have not alleged an injury sufficient to
confer standing under the UCL.  Plaintiffs built profitable
clinics and do not assert that they lost money while the diet
drugs were on the market.  Instead, plaintiffs allege that they
lost future business profits when Wyeth withdrew the drugs from
the market at the request of the FDA.  Plaintiffs simply have no
legally protected interest in Wyeth's continuing to manufacture
and sell the drugs in issue.

Furthermore, plaintiffs have not alleged that they are
entitled to any remedy available under the UCL.  An action under
the UCL is equitable in nature and therefore damages are not
recoverable.  Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d
937, 943 (Cal. 2003).  Instead, a plaintiff's remedies under the
UCL are limited to restitution and injunctive relief.  E.g.,
Clark v. Super. Ct., 235 P.3d 171, 174 (Cal. 2010).

As discussed above, the diet drugs at issue were
withdrawn from the market in September, 1997.  Thus, plaintiffs
cannot allege any imminent threat of future harm to justify
injunctive relief.  See, e.g., Feitelberg v. Credit Suisse First
Boston, LLC, 36 Cal. Rptr. 3d 592, 602 (Cal. Ct. App. 2005).

Similarly, plaintiffs are not entitled to restitution.
"'The object of restitution is to restore the status quo by
returning to the plaintiff funds in which he or she has an
ownership interest.'"  Id. (quoting Korea Supply, 63 P.3d at
947).  Plaintiffs do not allege that any of the funds they

-3-

invested in weight loss clinics were directly paid to or retained by Wyeth.   Instead, plaintiffs seek "disgorgement of all earnings, profits, compensation and benefits (or the reasonable value thereof) gained by the Pharmaceutical Defendants as a result of such unfair, unlawful and fraudulent business practices."   These earnings and profits represent money received by Wyeth from third parties, in which plaintiffs have no ownership interest.   The California Supreme Court has specifically held that "[c]ompensation for a lost business opportunity" and "nonrestitutionary disgorgement of profits" are not available as remedies under the UCL.   Korea Supply, 63 P.3d at 948, 949.   On the face of the complaint, plaintiffs are not entitled to either of the two remedies available under the UCL.

          For the above reasons, the motion of Wyeth for judgment on the pleadings will be granted as to Count I.

          Plaintiffs next assert claims in Counts II, III, and IV for negligence and strict liability.   According to the complaint, Wyeth failed to exercise reasonable care "in the design, research, development, manufacture, sale, testing, quality assurance, quality control and/or distribution" of the diet drugs.   Plaintiffs maintain that Wyeth, as a manufacturer of pharmaceuticals, should be held strictly liable for failing to warn of the risks associated with ingestion of the drugs.

          In actions for negligence and strict liability, "a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." Seely v. White Motor Co., 403 P.2d 145, 151 (Cal. 1965).

-4-

Accordingly, a plaintiff may not recover "'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits--without any claim of personal injury or damages to other property.'" Jimenez v. Super. Ct., 58 P.3d 450, 456 (Cal. 2002) (quoting Sacramento Reg'l Transit Dist. v. Grumman Flxible, 204 Cal. Rptr. 736, 739 (Cal. Ct. App. 1984)). Here, the complaint contains no allegations of any physical injury to plaintiffs or their property, only allegations of investment losses. Thus, their negligence and strict liability claims are barred by the economic loss doctrine.

Robinson Helicopter Co. v. Dana Corp., on which plaintiffs rely, is not to the contrary. 102 P.3d 268 (Cal. 2004). There, the California Supreme Court concluded that the economic loss rule did not bar a helicopter manufacturer's fraud and intentional misrepresentation claims against the supplier of helicopter clutch parts. Id. at 274-75. The court specifically noted that its holding was "narrow in scope" and focused on the plaintiff's intentional tort claims. Id. at 276. There was no indication that the Robinson holding would apply to claims for strict liability or negligence. Id.; see also Jackson v. Balanced Health Prods., Inc., No. 08-5584, 2009 WL 1625944, at *5 (N.D. Cal. June 10, 2009).

Relying on Robinson Helicopter Co., plaintiffs further maintain that the economic loss rule does not apply where tort claims "are not dependent on any contractual relationship." This is not so. In Seely v. White Motor Co., the seminal California case dealing with the economic loss rule, the California Supreme

-5-

Court applied the rule to bar a truck owner obtaining any tort recovery from the truck manufacturer where there was no contractual relationship between the parties.   403 P.2d at 147, 151-52.   Seely remains good law and was not overruled by Robinson Helicopter Co.   Accordingly, defendant's motion for judgment on the pleadings will be granted as to Counts II, III, and IV.

    We turn now to plaintiffs' claim for breach of implied warranty in Count V.   The California Commercial Code provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."   Cal. Com. Code § 2314(1).

    To state a claim for breach of implied warranty, a plaintiff must be in privity of contract with the defendant. Burr v. Sherwin Williams Co., 268 P.2d 1041, 1048-49 (Cal. 1954); see also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).   Plaintiffs maintain that an exception to this general rule applies to their claim.   In actions involving food products and pharmaceuticals, "an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract."   Burr, 268 P.2d at 1048.

    Plaintiffs cannot rely on this exception to the privity requirement, because they were not the "ultimate consumer[s]" of the diet drugs.   Instead, plaintiffs concede that they merely acted as "conduits" as physicians prescribing the diet drugs to their patients.   Under these circumstances, their claim for breach of implied warranty must fail.   Accordingly, defendant's

-6-

motion for judgment on the pleadings will be granted as to Count V.

Finally, we address plaintiffs' claim for fraud in Count VI.  Under California law, the elements of common law fraud are:  (1) a misrepresentation or omission of a material fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage.  <u>Robinson Helicopter Co.</u>, 102 P.3d at 274.  Under Rule 9 of the Federal Rules of Civil Procedure, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This particularity requirement necessitates the pleading of facts which show "the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation."  <u>Misc. Serv. Workers, Drivers & Helpers v. Philco-Ford Corp.</u>, 661 F.2d 776, 782 (9th Cir. 1981); <u>see also Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs have not satisfied this particularity requirement.  The complaint merely offers the general statement that Wyeth's "advertising program, by uniform affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of [diet drugs] ... was safe for human use; had no, or no unacceptable, side effects; had fewer side effects that other methods of weight loss; constituted a convenient, safe form of weight loss; would result in permanent weight loss; and would not interfere with daily life."  Plaintiffs offer no particulars regarding Wyeth's

-7-

fraud, including "the time, place and specific content" of Wyeth's alleged misrepresentations.  <u>Misc. Serv. Workers</u>, 661 F.2d at 782.

Even if sufficiently pleaded, plaintiffs' fraud claim fails because they have suffered no damage.  While the product in issue was on the market, plaintiffs made a profit from their weight-loss clinics.  They have not alleged that Wyeth represented to them that the diet drugs would be on the market indefinitely or that Wyeth guaranteed the success of their investments in weight-loss clinics.

Accordingly, the motion for judgment on the pleadings will be granted as to Count VI.